IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.H. ROBINSON WORLDWIDE, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 05 C 3401 |
| v. | ) |
| | ) |
| COMMAND TRANSPORTATION, | ) |
| LLC, PAUL LOEB, and ERIC HARRISON, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff C.H. Robinson Worldwide, Inc. ("C.H. Robinson") filed the present eight-count First Amended Complaint against Defendants Command Transportation, LLC ("Command"), Paul Loeb, and Eric Harrison. C.H. Robinson alleges that Loeb and Harrison violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA"). C.H. Robinson also alleges state law claims of breach of contract, misappropriation of trade secrets, unfair competition, conversion, fraud, conspiracy, and a constructive trust claim pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367. Before the Court is Defendants' Motion to Dismiss C.H. Robinson's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] As discussed below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

---

[1] Pursuant to Federal Rule of Civil Procedure 10(c), Defendant Eric Harrison adopted the arguments set forth by Defendants Command Transportation and Paul Loeb in their Memorandum in Support of their Motion to Dismiss. (R. 27-1.)

## BACKGROUND[2]

Plaintiff C.H. Robinson is a Delaware corporation with its principal place of business in Eden Prairie, Minnesota. (R. 15-1; First Am. Compl. ¶ 1.) C.H. Robinson is in the business of providing commercial logistics services, and in December 1999, purchased substantially all of the assets of American Backhaulers ("Backhaulers"), another logistics company. (*Id.* ¶¶ 1-2, 25.) C.H. Robinson's purchase of Backhaulers' assets included, among other things, (1) the exclusive acquisition of Express, a proprietary software program (the "Express software"), (2) the execution of non-competition, non-solicitation, and confidentiality agreements by Backhaulers' employees, (3) Backhaulers' know-how, and (4) Backhaulers' intellectual property rights. (*Id.* ¶¶ 2, 26.)

Defendant Command Transportation, LLC, is a Delaware limited liability company with its principal place of business in Skokie, Illinois. (*Id.* ¶ 3.) Command is a competitor of C.H. Robinson and is in the business of freight brokerage services. (*Id.*) Also, Command conducts business under the assumed names of DND Express and DND Logistics and was previously known as Command Logistics Systems, LLC. (*Id.*)

Defendant Paul Loeb, an individual residing at 223 Linden Park Place, Highland Park, Illinois, is the previous owner of Backhaulers. (*Id.* ¶ 4.) C.H. Robinson conditioned its purchase of Backhaulers' assets "upon Loeb … signing and complying with a non-compete, non-solicitation, and confidentiality agreement." (*Id.* ¶ 27.) That agreement precluded Loeb from (1) "competing with C.H. Robinson," (2) "soliciting or inducing C.H. Robinson's employees to

---

[2] As required under Rule 12(b)(6), the Court presumes the allegations in the complaint are true.

leave for a … period of time," (3) "utilizing or disclosing proprietary information of C.H. Robinson," (4) taking any C.H. Robinson property, (5) disclosing any "trade secrets, know-how, [or] other proprietary documents and information related to the business," and (6) "using any such information for [his] own benefit or the benefit of any third party so long as such information is not in the public domain." (*Id.* ¶¶ 27, 29.) Loeb worked at C.H. Robinson from December 1999 until his voluntarily departure on September 30, 2002. During that time, Loeb had exposure to C.H. Robinson's confidential and proprietary information. (*Id.* ¶¶ 27, 57.) Presently, Loeb is affiliated with Command. (*Id.* ¶ 4.)

Defendant Eric Harrison, an individual residing at 715 Astor Lane, Wheeling, Illinois, is a former employee of Backhaulers and was a key developer of the Express software. (*Id.* ¶ 5.) After C.H. Robinson purchased Backhaulers' assets in December 1999, Harrison moved to Minnesota and became C.H. Robinson's Director of Technology. (*Id.* ¶¶ 5, 33.) Harrison implemented and further developed the Express software across all of C.H. Robinson's business, at which time he had exposure to confidential and proprietary information, including the Express software source code, object code, and functionality. (*Id.* ¶¶ 5, 33-34, 57.) In April 2002, Harrison voluntarily left C.H. Robinson, at which time he entered into an agreement with C.H. Robinson that contained non-competition, non-solicitation, confidentiality, and invention assignment provisions. (*Id.* ¶ 5.) Harrison is now associated with Command as a software developer. (*Id.* ¶ 51.) According to C.H. Robinson, Loeb and Harrison, now employees of Command, have recently developed a new software program, Slingshot, "which is identical to C.H. Robinson's Express software." (*Id.* at ¶ 52.)

**LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assoc., Inc. v. Chicago Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The Court will only grant a motion to dismiss if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Centers v. Mortgage, Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) (quoting *Coney v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957)). In making its determination, the Court must assume the truth of the facts alleged in the pleadings, construe the allegations liberally, and view them in the light most favorable to the plaintiff. *Centers,* 398 F.3d at 333.

**ANALYSIS**

**I.    Computer Fraud & Abuse Act Claim – Count VIII**[3]

C.H. Robinson alleges that Loeb and Harrison violated Sections 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(A)(iii) of the Computer Fraud and Abuse Act ("CFAA"). Defendants argue that C.H. Robinson has failed to state a claim under the CFAA because C.H. Robinson   (1) did not properly allege the requisite damage or loss as those terms are defined by the CFAA,  and  (2) did not allege that Loeb and Harrison unlawfully accessed C.H. Robinson's computer system.

---

[3] On June 13, 2005, the Court dismissed C.H. Robinson's initial Complaint based on its failure to properly allege diversity jurisdiction. *See* 28 U.S.C. § 1332. In its First Amended Complaint, C.H. Robinson included a claim under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* that confers federal question subject matter jurisdiction on the Court. *See* 28 U.S.C. § 1331. The Court will address this count first in order to ensure that the Court has subject matter jurisdiction over the remaining counts.

### A. Loss or Damage

First, Defendants argue that C.H. Robinson failed to properly allege that it suffered the requisite damage or loss as those terms are defined by the CFAA. Section 1030(g) provides, in relevant part, that "[a]ny person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief," and "[a] civil action for a violation of this section may be brought only if the conduct involves one of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)." *See* 18 U.S.C. § 1030(g). Thus, a party bringing a civil action under the CFAA must allege both: (1) a violation of one of the subsections of Section 1030; and (2) one of the listed factors in Section 1030(a)(5)(B)(i)-(v). *See Charles Schwab & Co., Inc. v. Carter*, No. 04 C 7071, 2005 WL 351929, at *3 (N.D. Ill. Feb. 11, 2005). The factors in Sections 1030(a)(5)(B)(i)-(v) do not address prohibited conduct, but instead list specific forms of "damage" or "loss" that are "possible harmful results of violations of other parts of the statute." *Id.*

Here, C.H. Robinson alleges that it "suffered damages as a result of Harrison's and Loeb's actions in an amount to be determined at trial." (R. 15-1, First Am. Compl. ¶ 103.) Viewing the allegations in the First Amended Complaint in a light most favorable to C.H. Robinson, C.H. Robinson is claiming "loss to one or more persons during any 1-year period … aggregating at least $5,000 in value." *See* Section 1030(a)(5)(B)(i). C.H. Robinson's allegations of loss consist of (1) the loss in value of trade secrets such as the Express software and other proprietary and confidential information that was not previously known to the public, and (2) the loss of competitive advantage. (R. 15-1, First Am. Compl. ¶¶ 58, 59.)

In a similar matter where a plaintiff alleged wrongful copying of proprietary financial modeling computer software, the Court discussed damages under the CFAA:

> Chief Judge Charles Kocoras recognized that a plaintiff stated a claim under the CFAA when it alleged that the defendant had exceeded his authorized access and acquired trade secrets that were later used to the detriment of the plaintiff. In addition, a district court in the Western District of Washington determined that a former employer properly stated a claim under the CFAA when it alleged that a former employee had sent e-mails including trade secrets and proprietary information to a competitor while still employed by the plaintiff.

*Charles Schwab & Co., Inc*., 2005 WL 351929, at *3 (citations omitted). Similarly, "[c]aselaw supports an employer's use of the CFAA's Civil Remedies to sue former employees and their new companies who seek a competitive edge through wrongful use of information from the former employer's computer system." *Id*. (quoting *Pacific Aerospace & Elec., Inc. v. Taylor,* 295 F.Supp.2d 1188, 1195 (E.D. Wash. 2003)). C.H. Robinson has properly alleged "loss" under the CFAA based on its allegations of the loss in value of trade secrets and loss of competitive edge.

Meanwhile, Defendants did not develop their cursory argument that *Nexans Wires S.A. v. Sark-USA, Inc.,* 319 F.Supp.2d 468, 476-78 (S.D.N.Y. 2004) should control. Defendants' attempt at developing this argument in their Reply Brief does not save the day because when a defendant fails to raise or develop an issue until reply, he waives the argument because the plaintiff has had no chance to respond. *See Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005) (citation omitted). Accordingly, Defendants' argument concerning C.H. Robinson's "loss" fails.

B.   **Unlawful Access**

Second, Defendants contend that C.H. Robinson has not alleged unlawful access of its computers as required under Sections 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(A)(iii) of the CFAA.  More specifically, Defendants argue that C.H. Robinson fails to allege that Loeb or Harrison accessed C.H. Robinson's protected computer system to steal the trade secret information at issue.  Plaintiff argues that it properly stated a CFAA cause of action by alleging that Loeb and Harrison intentionally exceeded their authorized access when they accessed C.H. Robinson's protected network to acquire the Express software for the benefit of themselves and Command.

The Court turns to the federal notice pleading standards under Federal Rule of Civil Procedure 8(a)(2).  In alleging its claim under the CFAA, C.H. Robinson incorporates by reference all allegations from paragraphs 1 through 63, including the allegations of Loeb's and Harrison's inappropriate use of C.H. Robinson's proprietary information and software code in developing Slingshot.  (R. 15-1, First Am. Compl. ¶¶ 53-57.)  It further alleges that Loeb and Harrison did not have authorization to access C.H. Robinson's "computer systems, computerized information, access software, access source code, access object code, or continue to possess C.H. Robinson electronic files and data for their personal gain."  (*Id.* ¶ 101.)  C.H. Robinson alleges that Loeb and Harrison violated sections of the CFAA through these actions.  (*Id*. ¶ 102.)  These allegations satisfy the liberal notice pleading standards of Rule 8(a).  *See Gale v. Hyde Park Bank,* 384 F.3d 451, 453 (7th Cir. 2004) ("All a complaint need do is narrate a claim for relief.")

Defendants nonetheless assert that C.H. Robinson failed to allege that Loeb or Harrison unlawfully accessed a protected computer to obtain information involving an interstate or foreign communication as required under Section 1030(a)(2)(C) because C.H. Robinson did not suggest that Loeb or Harrison intercepted interstate communications. Defendants, however, ignore relevant language from Section 1030(a)(2)(C) that prohibits a person from unlawfully accessing a computer to "obtain information from any protected computer *if the conduct involved an interstate or foreign commerce*." 18 U.S.C. § 1030(a)(2)(C) (emphasis added). The plain language of this statute indicates that the conduct of unlawfully accessing a computer, and not the obtained information, must involve interstate of foreign commerce. *See Charles Schwab & Co., Inc. v. Carter*, 2005 WL 2369815, at *8 (N.D. Ill. Sep. 27, 2005) (downloading substantial volumes of files from plaintiff's computers involved interstate commerce because plaintiff maintained interstate computer network). Here, C.H. Robinson alleges that its "computer system is a protected computer and network which is used across state lines in interstate commerce." (R. 15-1, First Am. Compl. ¶ 100.) Viewing the allegations in a light most favorable to C.H. Robinson, it is reasonable to infer that Defendants' conduct involved interstate commerce.

Finally, Defendants contend that C.H. Robinson failed to allege with the particularity required by Federal Rule of Civil Procedure 9(b) that Loeb or Harrison accessed a protected computer "knowingly and with intent to defraud." Under Rule 9(b), "intent, knowledge and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). The Rule's particularity requirements do not apply to intent allegations. Defendants' motion to dismiss Count VIII is denied.

**II.     Breach of Contract – Count I**

Defendants contend that C.H. Robinson did not properly allege that Loeb and Harrison breached their non-competition agreements and asset purchase agreements. Citing Illinois law, Defendants specifically argue that C.H. Robinson failed to indicate the essential elements of a contract and the exact contracts at issue. It is well-established, however, that the Federal Rules of Civil Procedure – not state procedural rules – govern diversity actions and state law claims brought in federal court through supplemental jurisdiction. *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.,* 412 F.3d 745, 750 (7th Cir. 2005); *Houben v. Telular Corp.*, 309 F.3d 1028, 1032-36 (7th Cir. 2002). As previously noted, under the liberal federal notice pleading standard, a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47; *see also Shah v. Inter-Cont'l Hotel Chicago Operating Corp.,* 314 F.3d 278, 282 (7th Cir. 2002).

In its First Amended Complaint, C.H. Robinson identifies which contracts are at issue. (*See* R. 15-1, First Am. Compl. ¶¶ 27-31, 65.) Further, C.H. Robinson alleges how Loeb and Harrison breached these agreements, by listing six different actions, including utilizing or disclosing the Express software. (*Id*. ¶ 67.) As such, C.H. Robinson has given Defendants notice of its breach of contract claim and the grounds upon which it rests. Accordingly, the Court denies Defendants' motion to dismiss Count I of the First Amended Complaint.

### III.     Illinois Trade Secrets Act – Count II

As a threshold matter, Defendants contend that C.H. Robinson, as a Delaware corporation with its principal place of business in Minnesota, did not properly allege why the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065, *et seq.*, should apply under Count II. Under the *Erie* doctrine "a federal court is not authorized to apply a different substantive law in a diversity case from the law that a state court would apply were the case being litigated in a state court," and thus Illinois law is the source for choice-of-law rules under the circumstances. *FDIC v. Wabick,* 335 F.3d 620, 624-25 (7th Cir. 2003) (*Erie* doctrine applies to non-diversity cases where state law supplies the rule of decision). Under Illinois trade secrets law, courts must apply the law of the state where the alleged wrong took place or where the benefit was obtained, which is typically the defendant's principal place of business. *See Mergenthaler Linotype Co. v. Leonard,* 66 Ill.App.3d 789, 803, 23 Ill.Dec. 352, 383 N.E.2d 1379 (Ill.App.Ct. 1978); *see also Salton, Inc. v. Philips Domestic Appliances & Personal Care B.V.,* 391 F.3d 871, 879 (7th Cir. 2004). Because Command's principal place of business is in Illinois and Defendants received the benefits of Harrison and Loeb's alleged misappropriation of C.H. Robinson's trade secrets in Illinois, Illinois law applies.

Next, Defendants contend that Count II does not identify what C.H. Robinson claims is a trade secret. In its First Amended Complaint, C.H. Robinson alleges how Loeb and Harrison unlawfully acquired C.H. Robinson's trade secrets, describes the trade secrets in sufficient detail, and explains how Defendants are using the trade secrets. (R. 15-1, First Am. Compl. ¶¶ 38-63, 70-76.) Further, despite Defendants' contention, litigants are not required to disclose details when alleging the misappropriation of a trade secret "for the simple reason that such a

requirement would result in public disclosure of the purported trade secret." *Automed Techs., Inc. v. Eller,* 160 F.Supp.2d 915, 920-21 (N.D. Ill. 2001) (citation omitted). Plaintiff has satisfied its pleading requirements for Count II, and the Court denies Defendants' motion to dismiss Count II.

## IV.     Preemption Under Illinois Trade Secrets Act – Counts III through VII

Next, Defendants contend that the ITSA preempts C.H. Robinson's common law claims of unfair competition, conversion, fraud, conspiracy, and constructive trust.[4] They argue that Section 8 of the ITSA preempts all common law claims if they are arguably based, in whole or in part, on allegations of misappropriation of trade secrets. *See* 765 ILCS 1065/8; *see also PepsiCo, Inc. v. Redmond,* 54 F.3d 1262, 1269 (7th Cir. 1995) ("ITSA abolishes any common law remedies or authority contrary to its own terms"). Section 1065/8(a) states that the "Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." *McDonald's Corp. v. American Motorists Ins. Co.,* 321 Ill.App.3d 972, 986, 255 Ill.Dec. 67, 748 N.E.2d 771 (Ill.App.Ct. 2001). By its plain terms, the ITSA preempts claims "only when they rest on conduct that is said to misappropriate trade secrets." *Hecny Transp., Inc. v. Chu,* ___ F.3d ___, ___, 2005 WL 2842081, at *2 (7th Cir. Oct. 31, 2005). In other words, preemption "does not apply to duties imposed by law that are not dependent upon the existence of competitively

---

[4] Whether the ITSA preempts C.H. Robinson's constructive trust claim is not at issue, because under Illinois law a constructive trust is not a separate cause of action, but rather an equitable remedy. *See Eychaner v. Gross,* 202 Ill.2d 228, 274, 269 Ill.Dec. 80, 779 N.E.2d 1115 (2002). Indeed, C.H. Robinson admits that it is seeking a constructive trust for remedial purposes, and thus the Court need not dismiss Count VII. *See, e.g., Chicago Park District v. Kenroy, Inc.,* 107 Ill.App.3d 222, 224-25, 63 Ill.Dec. 134, 437 N.E.2d 783 (Ill.App.Ct. 1982).

significant secret information." *Id.* The Court thus reviews the claims that Defendants challenge to determine whether they are dependent on the misappropriation of a trade secret. *See Thomas & Betts Corp. v. Panduit Corp.,* 108 F.Supp.2d 968, 972 (N.D. Ill. 2000); *see, e.g., McDonald's Corp,* 321 Ill.App.3d at 986.

### A. Unfair Competition – Count III

Under its unfair competition claim, C.H. Robinson alleges that "Defendants are unfairly competing in the market place by utilizing C.H. Robinson's confidential information in the marketplace, soliciting and or hiring C.H. Robinson employees, soliciting C.H. Robinson's employees for employment to gain access to C.H. Robinson's confidential information, soliciting confidential information from C.H. Robinson employees, and/or utilizing C.H. Robinson's property or proprietary software." (R. 15-1, First Am. Compl. ¶ 79.)

C.H. Robinson's unfair competition allegations fall squarely within the ITSA's preemption clause because the claim is premised on its confidential information and proprietary software. *See Thomas & Betts Corp.,* 108 F.Supp.2d at 973 (unfair competition allegations simply described how defendants used plaintiff's confidential information). In other words, the unfair competition claim is "dependent upon the existence of competitively significant secret information." *Hecny Transp., Inc. v. Chu,* 2005 WL 2842081, at *2. In fact, in alleging its claim under the ITSA, C.H. Robinson unequivocally states that "[t]he proprietary business, software, and customer information of C.H. Robinson constitute trade secrets." (R. 15-1, First Am. Compl. ¶ 70.) Although C.H. Robinson argues that the unfair competition claim is premised on Defendants' illegal solicitation and hiring of C.H. Robinson's employees, C.H. Robinson cannot ignore its allegations that the unlawful use of its trade secrets underscores its claim. Therefore,

12

the ITSA preempts C.H. Robinson's unfair competition claim and the Court grants Defendants' motion to dismiss Count III with prejudice.

**B.     Conversion – IV**

Next, C.H. Robinson alleges that "Defendants individually or in concert with another removed from C.H. Robinson or retained its property (software and/or information) without authorization, and converted it to their own use." (R. 15-1, First Am. Compl. ¶ 83.) Due to C.H. Robinson's bare-boned allegation, it is unclear if the "information" or "software" Defendants allegedly converted were trade secrets, and the Court cannot determine whether the ITSA preempts this claim. On that same note, due to these nebulous allegations, C.H. Robinson has not fulfilled the federal notice pleading standard because the allegations do not "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. at 47; *see also Conner v. Illinois Dep't of Natural Res.*, 413 F.3d 675, 679 (7th Cir. 2005) ("pleading is still vitally important to inform the opposing party of the grounds upon which a claim rests"). As such, the Court grants Defendants' motion to dismiss Count IV without prejudice and grants C.H. Robinson leave to amend this claim.

**C.     Fraud – Count V**

In Count V, C.H. Robinson alleges that "Defendants individually or in concert with one another falsely represented to C.H. Robinson that it was exclusively purchasing Express, that the agreements entered into with Harrison and Loeb were being honored and/or that C.H. Robinson's property had been returned upon Harrison's and Loeb's termination of employment." (R. 15-1, First Am. Compl. ¶ 89.) C.H. Robinson further alleges that Defendants'

13

misrepresentations resulted in the loss of monies and goodwill concerning the Express software. (*Id.* ¶ 90.)

Again, the Express software is C.H. Robinson's proprietary software and is a basis for C.H. Robinson's Illinois Trade Secret Act claim. Because C.H. Robinson's fraud claim rests on conduct that is, in essence, the misappropriating of trade secrets, the ITSA preempts this claim. *See Hecny Transp., Inc. v. Chu,* 2005 WL 2842081, at *2. The Court grants Defendants' motion to dismiss Count V with prejudice.

        **D.**       **Conspiracy – Count VI**

C.H. Robinson also alleges a common law conspiracy claim. In Count VI, C.H. Robinson states that certain individuals had a "meeting of the minds to improperly compete with C.H. Robinson, acquire C.H. Robinson's proprietary software and information, utilize or disclose CH. Robinson's software, property, confidential information or trade secrets information, not allow C.H. Robinson to realize the benefit of its bargains with Harrison and/or Loeb and waste revenues of C.H. Robinson." (R. 15-1, First Am. Compl. ¶ 93.) Because C.H. Robinson unequivocally alleges that these individuals conspired to acquire its proprietary software, confidential information, and trade secrets, the ITSA preempts this conspiracy claim. Hence, the Court grants Defendants' motion to dismiss Count VI with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss. The Court dismisses Plaintiff's common law claims under Counts III, V, and VI with prejudice. The Court dismisses Count V without prejudice. Plaintiff has until December 6, 2005 to file a Second Amended Complaint.

Dated: November 16, 2005

                                          **ENTERED**

                                      *[signature]*

                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**