## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

C.H. ROBINSON WORLDWIDE, INC., )
a Delaware corporation, )
                                      )
           Plaintiff, )
                                       )      Case No. 05 C 3401
      v. )
                                         )      Judge Amy J. St. Eve
COMMAND TRANSPORTATION, LLC )
an Illinois limited liability company, )
PAUL LOEB, an individual, and )
ERIC HARRISON, an individual, )
                                         )
           Defendants. )

## STIPULATION TO DISMISS

WHEREAS, the parties to the above referenced matter and a third-party entered into a Settlement Agreement to resolve the above referenced matter.

THEREFORE, it is hereby stipulated and agreed to among the parties, and third-party The Jodi Sue Loeb Trust, that the above referenced matter shall be dismissed without prejudice, that each party, including The Jodi Sue Loeb Trust, shall be responsible for its own fees and costs and that the Court shall retain jurisdiction of this matter and the parties to the Settlement Agreement to enforce the terms of the Settlement Agreement attached hereto.

FURTHER, leave is granted to reinstate this matter to enforce the Settlement Agreement on or before June 10, 2011. In the event a motion to reinstate or enforce settlement is not filed on or before the foregoing date, then this dismissal will be with prejudice without further action of this Court.

Agreed to By Counsel For:

C.H. Robinson Worldwide, Inc.

Dated: **6/27/06**
Michael D. Wexler
J. Scott Humphrey
SEYFARTH SHAW LLP
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603

Paul Loeb

Dated: 06/27/06
Stephen Fedo
Jonathan D. Wasserman
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Suite 2200
Chicago, Illinois 60602

Command Transportation, LLC

Dated: 06/27/06
Stephen Fedo
Jonathan D. Wasserman
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Suite 2200
Chicago, Illinois 60602

The Jodi Sue Loeb Trust

Dated: 06/27/06
Stephen Fedo
Jonathan D. Wasserman
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Suite 2200
Chicago, Illinois 60602

Eric Harrison

Dated: 6/27/06
Mitchell L. Marinello
Joseph Nacca
Novack and Macey LLP
303 West Madison Street Suite 1500
Chicago, Illinois 60606



## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into between, on the one hand,

A.      Plaintiff, C.H. ROBINSON WORLDWIDE, INC., on behalf of itself, its successors, divisions, Affiliates, subsidiaries and parents, and collectively, its employees, independent contractors, officers, directors, partners, agents, assignees, attorneys (past and present), and all other persons and entities acting, not merely based on status, directly or indirectly on behalf of, in concert with or for it, including former employees and, fiduciaries, heirs, executors, administrators, beneficiaries, trustees, predecessors, members, shareholders, and legal representatives (collectively "CHRW"); and on the other hand,

B.      Defendant, COMMAND TRANSPORTATION, LLC, on behalf of itself, its successors, divisions, Affiliates, subsidiaries and parents, and collectively, its employees, independent contractors, officers, directors, partners, agents, assignees, attorneys (past and present), all freight brokerage, freight forwarding or freight logistics entities in which it has a financial or ownership interest, and all other persons and entities acting, not merely based on status, directly or indirectly on behalf of, in concert with or for the benefit of it, including former employees, fiduciaries, heirs, executors, administrators, beneficiaries, trustees, predecessors, members, shareholders and legal representatives (collectively "Command");

C.      Defendant, PAUL LOEB, on behalf of himself, his successors, agents, assignees, Affiliates, heirs, employees, independent contractors, all freight brokerage, freight forwarding or freight logistics entities in which he has a financial or ownership interest, and all other persons and entities acting, not merely based on status, directly or indirectly on behalf of, in concert with or for the benefit of him including, executors, beneficiaries, trustees, administrators, predecessors and legal representatives (collectively "Loeb");

CH1 11076630.1

D.     Defendant, ERIC HARRISON, on behalf of himself, his, successors, agents, assignees, Affiliates, heirs, employees, independent contractors, all entities in which he has a financial or ownership interest, including, but not limited to, Harrison Software Inc. and HSI Technologies, Inc., and all other persons and entities acting, not merely based on status, directly or indirectly on behalf of, in concert with or for the benefit of him including, executors, beneficiaries, trustees, administrators, predecessors and legal representatives (collectively "Harrison"); and

E.     Third-Party, THE JODI SUE LOEB TRUST, on behalf of itself, its successors, divisions, Affiliates, subsidiaries and parents, and collectively, its employees, independent contractors, legatees, officers, directors, partners, agents, assignees, attorneys (past and present), all freight brokerage, freight forwarding or freight logistics entities in which it has a financial or ownership interest, and all other persons and entities acting, not merely based on status, directly or indirectly on behalf of, in concert with or for the benefit of it, including former employees, fiduciaries, heirs, executors, administrators, beneficiaries, trustees, predecessors, members, shareholders and legal representatives (collectively the "Trust")(collectively CHRW, Command, Loeb, Harrison and the Trust, the "Parties").

WHEREAS, CHRW has made certain allegations against Command, Loeb and Harrison, regarding the events surrounding the creation of a software program called Slingshot which CHRW alleges improperly utilizes trade secrets belonging to CHRW contained within CHRW's software program called Express, including all related source code, software, programming, stored procedures and databases comprise it (collectively "Express" hereinafter) and that Command, Loeb and Harrison, engaged in other activities in violation of contractual, statutory and/or common law obligations owed to CHRW which are the subject of *C.H. Robinson*

2

*Worldwide, Inc., v. Command Transportation , LLC, Paul Loeb and Eric Harrison,* No. 05 C

3401, U.S. District Court, Northern District of Illinois, Eastern Division (the "Lawsuit");

WHEREAS, Command, Loeb, Harrison and the Trust deny all of CHRW's allegations in

the Lawsuit, including any wrongdoing;

WHEREAS, the Trust is consenting to and submitting itself to the jurisdiction of this

Court solely for the purposes of this Agreement and the settlement agreement reached between

the parties to this Lawsuit and the Trust;

WHEREAS, the Trust is waiving the requirement that it be served with formal legal

process to effect the Court's jurisdiction over it for purposes of enforcing this Agreement and the

settlement agreement between the parties and the Trust contained within this Agreement;

WHEREAS, any party to this Agreement may invoke the Court's jurisdiction to enforce

this Agreement by filing, giving proper notice, and serving on each counsel for the Parties to this

Agreement a petition, motion or rule to enforce this Agreement and the settlement agreement

herein in accordance with the Federal Rules of Civil Procedure;

WHEREAS, the Parties desire to forego further litigation and controversy and to fully

settle and compromise any and all claims and issues of law or fact that were raised in the

Lawsuit;

WHEREAS, the Parties are undertaking the obligations of this Agreement without

admitting or conceding any liability, and solely for the purpose of resolving, without further cost

and disturbance, the Lawsuit; and

WHEREAS, these recitals are material terms of this Agreement.

NOW, therefore in consideration of the mutual obligations, terms, rights, covenants and

consideration contained herein, it is hereby agreed as follows:

3

CHI 11076630.1

1.      **Discontinued Use Of and Removal of Slingshot.**

A.      Command, Loeb, Harrison and the Trust will discontinue using and remove all versions of Slingshot ("Slingshot" in this Agreement shall mean all source code, software, programming, stored procedures, and databases that comprise Slingshot) from all computers, servers and other electronic storage media within their knowledge, possession or control as soon as possible in a manner that allows for an orderly transition of Command's, Loeb's, Harrison's and the Trusts' business to a different software system that complies with this Agreement, but in no event later than November 17, 2006. Command, Loeb, Harrison and the Trust will provide all hard copy and electronic originals and copies of all versions of Slingshot, as well as Express (Command, Loeb and the Trust deny having or having had Express in its possession or control), in their possession or control to outside counsel for CHRW, Seyfarth Shaw LLP, who shall serve as the "Custodian" of Slingshot and Express, no later than November 17, 2006 (CHRW shall be responsible for any fees charged by outside counsel acting as Custodian except reasonable fees incurred as a result of actions requested by Command, Loeb or the Trust and CHRW shall have the right to appoint substitute outside counsel in Chicago, Illinois to act as Custodian by agreement of Command, Loeb and the Trust, which agreement shall not be unreasonably denied; a separate Custodian Agreement will be executed by the parties upon the delivery of the items identified in this paragraph). After November 17, 2006, or a sooner date on which Command transitioned from Slingshot to another software program in compliance with this Agreement, Command, Loeb, Harrison and the Trust shall not, directly or indirectly, possess or utilize any originals or copies of Slingshot or Express at anytime.

B.      After November 17, 2006, or a sooner date on which Command transitioned from Slingshot to another software program in compliance with this Agreement,

4

data stored on Slingshot that may be needed by Command, Loeb or the Trust for taxes or accounting back-up purposes, not business operations, will either be printed out in hard copy or kept in an electronic format but in either case shall be deposited with the Custodian and if needed by Command, Loeb or the Trust for accounting or tax purposes, not business operations, the Parties will reasonably cooperate to allow prompt use under conditions insuring the intent of this Agreement.

        C.    Notwithstanding paragraphs 1.A. and 1.B. above, for a period of six months following November 17, 2006, or a sooner date on which Command transitioned from Slingshot to another software program in compliance with this Agreement, and solely for purposes of resolving billing disputes, property claims and commission disputes, Command's accounting personnel shall be permitted to retain and use one computer containing Slingshot to access the historical information concerning billing, property claims and commissions. Such computer shall not following November 17, 2006, or a sooner date on which Command transitions from Slingshot to another software program in compliance with this Agreement, be (i) connected to the internet or (ii) accessed other than by Command's accounting department for the purposes noted above in the preceding sentence. In addition to the inspection rights set forth in paragraph 4 below, the inspector provided for in this paragraph shall be entitled at any time, during the six month period described in this below, with no advance notice, to inspect such computer (e.g. the internet login record, load history, load number sequences, and usage log), to confirm compliance by Command, Loeb and the Trust with this paragraph 1.C. Upon the expiration of the six (6) month period described in this paragraph, the remaining copy of Slingshot shall be turned over to the Custodian as described in this Agreement.

5

2.     **Responsibilities of Custodian.**  The Custodian referenced in paragraph 1 above shall keep all originals and copies of all versions of Slingshot and Express until November 18, 2013, or such later date as reasonably determined by agreement of the Parties, which agreement will not be unreasonably denied, at which time all originals and copies of Slingshot and Express turned over to the Custodian pursuant to paragraph 1 shall be destroyed. The Custodian shall provide written confirmation of the destruction of such materials to the Parties. While Custodian shall use reasonable efforts to maintain the confidentiality and integrity of the items deposited with it, the Custodian shall not be responsible for loss or damage to the items within its custody, subject to the foregoing standard.

3.     **Purchase and Use of Commercially Available Software.**

A.     By November 17, 2006, or a sooner date on which Command transitions from Slingshot to another software program in compliance with this Agreement, Command, Loeb, and/or the Trust shall perform freight brokerage, freight forwarding and/or freight logistics activities only through the use of an off the shelf, commercially available freight brokerage, freight forwarding, and/or freight logistics software program(s) (hereinafter collectively the "Restricted Activity" or "Restricted Activities") for forty-five (45) months after the first such off the shelf, commercially available program is installed, pursuant to this paragraph 3.A., at any freight brokerage, freight forwarding and/or freight logistics businesses operated by, controlled by, "Affiliated" with or (subject to paragraph 10.G. below) invested in by Command, Loeb, and/or the Trust (hereinafter the "Restricted Period"). For purposes of this Agreement, "Affiliate" means controlling, controlled by, invested in (other than an investment permitted by paragraph 10.G.) or under common control with, the relevant person or entity and all words derivative thereof (like "Affiliated" and "Affiliates") shall have correlative meanings.

6

CHI 11076630.1

B.     Command, Loeb and/or the Trust shall not directly or indirectly develop, customize or alter the programming, source code or stored procedures of any freight brokerage, freight forwarding or freight logistics software programs through the end of the Restricted Period, unless specifically permitted by this Agreement, including, but not limited to, paragraph 3.C. below.

C.     Command, Loeb and the Trust are permitted to use upgrades released in the ordinary course of business or supplied as an emergency patch (e.g. security update) by the manufacturer or vendor of the off the shelf, commercially available software program(s) which are utilized by Command, Loeb and/or the Trust in compliance with this Agreement. However, through the end of the Restricted Period, Command, Loeb and/or the Trust cannot alter or customize off the shelf, commercially available software program(s) or upgrades, nor are Command, Loeb and/or the Trust permitted to make any suggestions to the manufacturer or vendor of any commercially available or privately available freight brokerage, freight forwarding or freight logistics software program(s) regarding features, functionality, and/or freight brokerage, freight forwarding or freight logistics services. This paragraph does not restrict normal manufacturer and vendor alteration and customization at installation (e.g. logos, local maps, employee names) or ordinary course changes in similar items (e.g. logo changes, employee departures) and normal course of business feedback to the manufacturer or vendor.

D.     Through the end of the Restricted Period, Command, Loeb and/or the Trust shall, as soon as reasonably possible, notify CHRW in writing of all freight brokerage, freight forwarding and/or freight logistics entities that it has acquired or become Affiliated with (collectively an "Acquisition"). In order to allow an orderly integration of any additional acquired entities or Affiliated entities in compliance with this Agreement, within the six (6)

7

months following an Acquisition and for the remainder of the Restricted Period, the acquired or Affiliated entity shall be subject to the terms of this Agreement. Consequently, by way of example, Command, Loeb and/or the Trust shall cause the acquired or Affiliated entity to purchase off the shelf, commercially available freight brokerage, freight forwarding and/or freight logistics software program(s) within six (6) months of the Acquisition as described in this Agreement and such entities must exclusively use the off the shelf commercially available program(s) through the end of the Restricted Period and may not alter, customize or develop freight brokerage, freight forwarding and/or freight logistics software in the same manner in which Command, Loeb and/or the Trust are restricted as described in this Agreement. Further, such entities are not permitted to make any suggestions to the manufacturer or vendor of any commercially available or privately available freight brokerage, freight forwarding and/or freight logistics software program(s) regarding features, functionality, and/or freight brokerage, freight forwarding or freight logistics services. This paragraph does not restrict normal manufacturer and vendor alteration and customization at installation (i.e. logos, local maps, employee names) or ordinary course changes in similar items (e.g. logo changes, employee departures) and regular normal course of business feedback to the manufacturer or vendor.

For purposes of clarity, the acquired or Affiliated entity is permitted to use its existing software during the six (6) month period following acquisition (so long as it is not Express or Slingshot) and this paragraph does not require the acquired or Affiliated entity to purchase additional or different off the shelf, commercially available software than the software implemented by Command in compliance with this Agreement.

4.  **Inspection of Software**. During the Restricted Period, CHRW shall be permitted to inspect (a) any freight brokerage, freight forwarding and/or freight logistics software

8

program(s) purchased by and/or utilized by Command, Loeb and/or the Trust and (b) any

computer, server or electronic storage device in the possession or control of Command, Loeb

and/or the Trust which is utilized for Restricted Activities. In order to conduct any such

inspection, CHRW shall (except as provided for in paragraph 1.C. above) be required to first

provide at least twenty-four (24) hours advance written notice (by e-mail or fax) to Command,

Loeb and/or the Trust prior to any such inspection. CHRW may use any person to conduct the

inspection. The cost of the inspector, if any, shall be paid by CHRW, and the inspector shall first

be required to execute and deliver to Command, Loeb and/or the Trust a confidentiality

agreement in the form attached hereto at Exhibit A which states that the inspector will keep all

information learned during any such inspection confidential (except activities which are

violations of this Agreement) and shall not interrupt the normal course of business at

Command's, Loeb's, and/or the Trust's operations during any inspection. The inspector shall

also be permitted to inspect any freight brokerage, freight forwarding and/or freight logistics

entities Affiliated with or acquired by Command, Loeb and/or the Trust subject to the same

terms and conditions stated above.

5. **Restrictions Upon and Permissible Activities of Harrison.**

    A.    Harrison's employment, relationship or association with Command, Loeb

and/or the Trust shall cease not later than two (2) weeks after the date on which Command

transitions from Slingshot to another software program in compliance with this Agreement. The

date on which Harrison terminates his employment, relationship or association with Command,

Loeb and/or the Trust shall be called "Harrison's Term Date".

    B.    Through two (2) years after Harrison's Term Date ("Harrison's Restricted

Period"), Harrison shall not directly or indirectly be employed by, affiliated with, or associated

9

with Command, Loeb, the Trust or any other freight brokerage, freight logistics, or freight
forwarding entity or person that conducts freight brokerage, freight forwarding or freight
logistics anywhere in the world, unless specifically permitted in this Agreement during the
software transition.

        C.     Through the end of Harrison's Restricted Period, Harrison shall not
directly or indirectly develop, write, alter, operate or customize any freight brokerage, freight
logistics, or freight forwarding software anywhere in the world.

        D.     Through the end of Harrison's Restricted Period, Harrison shall be
permitted to continue to work in the software industry and provide software development and
consulting services except in the areas of products, employment and services prohibited by this
Agreement. Further, should Harrison develop a product not prohibited by this Agreement which
might be used by an entity that is engaged in the freight brokerage, freight forwarding or freight
logistics business, Harrison may have incidental contact with such an entity for the non-
prohibited product. For purposes of illustration only, if Harrison developed a software program
that streamlines the delivery of 401(k) benefits and the product is purchased by a freight
brokerage business, Harrison can have incidental contact with the freight brokerage entity
purchasing such product, but only for purposes of the non-prohibited product.

        E.     Harrison shall be permitted to work with Neal, Gerber & Eisenberg LLP
to prepare an application for a patent for a software "queuing" or "Nexus" application or feature
("Nexus" or "queuing" is a software functionality that places orders or transactions in line or in
order of availability) which software, subject to paragraph 9.D. below, may be owned by Loeb,
Command, the Trust or their designees, but shall not directly or indirectly be utilized, altered or
developed by Loeb, Command, the Trust or their designees directly or indirectly for freight

10

forwarding, freight logistics or freight brokerage through the Restricted Period or periods described in paragraphs 3.B. and 3.C. above. However, Harrison's permissible activities may only be performed if Harrison does not have contact with Command, Loeb or the Trust to prepare the application. Further, Harrison may not work with or provide the queuing feature or application to any person or entity in the freight brokerage, freight forwarding or freight logistics business through November 17, 2008 and may not use, design or develop the queuing feature or application for use with or use in freight brokerage, freight forwarding or freight logistics through November 17, 2008. Harrison shall provide a copy of any patent applications for the queuing feature or application to CHRW's attorneys within seven (7) days of the submission of any such application(s) or revisions to any such application(s) subject to such submission being afforded confidential treatment, so long as the application does not violate this Agreement.

6.     **Covenants Regarding Work Force.**  Through December 10, 2009, Command, Loeb, Harrison and the Trust shall not anywhere in the United States and/or abroad, hire (a) any then current CHRW employee or (b) any person who was an employee of CHRW during the twenty-four (24) months preceding an interview or employment with Command, Loeb, Harrison and/or the Trust.

7.     **Covenants Regarding Customer Relationships.**

A.     Command, Loeb, Harrison and the Trust shall not solicit, accept freight from or conduct freight brokerage, freight forwarding or freight logistics business with any of the customers (or the customer specific division) listed in Exhibit B hereto through May 1, 2007. However, in certain instances identified in Exhibit B, a specific person(s) identified next to a particular customer, while employed by Command, Loeb or the Trust, may directly conduct business with the customer identified in Exhibit B. Further, this restriction is customer specific

11

and not geographic specific, unless a specific product or location is identified in Exhibit B next

to the customer's name. For ease of reference only, Exhibit E to this Agreement identifies

locations from which the customers identified in Exhibit B are believed to operate, but in no way

limits the application of the restrictions in this paragraph. CHRW may, but is not required to,

periodically update the locations and customer names identified in Exhibit E and provide such

update to Command and Loeb. Should Command, Loeb, Harrison or the Trust inadvertently

conduct business with an entity using a name different than the name identified in Exhibit B, that

Command, Loeb, Harrison or the Trust does not know or should have known is in fact one of the

customers identified in Exhibit B, it shall not be considered a violation of this Agreement.

        B.      Command, Loeb, Harrison and the Trust shall not solicit, accept freight

from or conduct freight brokerage, freight forwarding or freight logistics business with any of the

customers (or customer specific division) listed in Exhibit C hereto through September 3, 2007.

However, in certain instances identified in Exhibit C, a specific person(s) identified next to a

particular customer, while employed by Command, Loeb or the Trust, may directly conduct

business with the customer identified in Exhibit C. Further, this restriction is customer specific

and not geographic specific, unless a specific product or location is identified in Exhibit C next

to the customers name. For ease of reference only, Exhibit E to this Agreement identifies

locations from which the customers identified Exhibit C are believed to operate, but in no way

limits the application of the restrictions in this paragraph. CHRW may, but is not required to,

periodically update the locations and customer names identified in Exhibit E and provide such

update to Command and Loeb. Should Command, Loeb, Harrison or the Trust inadvertently

conduct business with an entity using a name different than the name identified in Exhibit C, that

12

Command, Loeb, Harrison or the Trust does not know or should have known is in fact one of the customers identified in Exhibit C, it shall not be considered a violation of this Agreement.

      C.     Command, Loeb, Harrison and the Trust shall not solicit, accept freight from or conduct freight brokerage, freight forwarding or freight logistics business with any of the customers (or customer specific division) listed in Exhibit D hereto through October 1, 2007. However, in certain instances identified in Exhibit D, a specific person(s) identified next to a particular customer, while employed by Command, Loeb or the Trust, may directly conduct business with the customer identified in Exhibit D. Further, this restriction is customer specific and not geographic specific, unless a specific product or location is identified in Exhibit D next to the customers name. For ease of reference only, Exhibit E to this Agreement identifies locations from which the customers identified in Exhibit D are believed to operate, but in no way limits the application of the restrictions in this paragraph. CHRW may, but is not required to, periodically update the locations and customer names identified in Exhibit E and provide such update to Command and Loeb. Should Command, Loeb, Harrison or the Trust inadvertently conduct business with an entity using a name different than the name identified in Exhibit D, that Command, Loeb, Harrison or the Trust does not know or should have known is in fact one of the customers identified in Exhibit D, it shall not be considered a violation of this Agreement. After execution of this Agreement, Paul Loeb shall update in writing the identity of his assistant to CHRW for purposes of this schedule upon any subsequent change in the identity of his assistant within 7-days of such change.

      D.     On September 10, 2006, March 1, 2007, and October 15, 2007 Command, Loeb and the Trust shall provide CHRW with a sworn affidavit of compliance stating that the

13

terms of this paragraph 7 have, except with respect to a *de minimus* violation, been complied with in their entirety.

      E.    If Command, Loeb and/or the Trust commits a "*de minimus* violation" of the restrictions set forth in paragraphs 7.A., 7.B. or 7.C., Command, Loeb and/or the Trust shall promptly, upon becoming aware thereof, notify CHRW of such violations and Command shall pay CHRW the margin/spread on those loads in violation. For purposes of this paragraph 7.E. and paragraph 7.D. above, "*de minimus* violation" of paragraphs 7.A., 7.B. and 7.C. means, in the aggregate in any six month calendar period loads resulting in a margin/spread not exceeding $6,000. A de *minimus* violation shall not be a breach of this Agreement.

      8.    **Covenants Regarding Proprietary Information.**

      A.    Command, Loeb, Harrison, the Trust and CHRW shall not utilize or disclose confidential or proprietary information of any other party to this Agreement or infringe any valid intellectual property rights of any other party to this Agreement. The obligations set forth in this paragraph do not apply to information that through no fault of the disclosing or using party to this Agreement has become or hereafter becomes generally known to the public, is or has been independently developed by the disclosing or using party to this Agreement or has been or is hereafter received by the disclosing or using party to this Agreement from a third party that the disclosing or using party to this Agreement has no reason to believe is in violation of or a breach of any duty of confidentiality by such third party.

      B.    In particular, Command, Loeb, Harrison and the Trust shall not utilize or disclose any trade secrets or confidential information of CHRW, as long as such matters remain trade secrets or confidential and CHRW shall not utilize or disclose any trade secrets or confidential information of Command, Loeb, Harrison or the Trust as long as such matters

14

remain trade secrets or confidential. Confidential information shall be defined as information which was legally generated or collected by or utilized in the operations of the "Respective Business" (Respective Business is defined as CHRW or Command as appropriate for the particular person or party that is to be bound. For example, Command, Loeb, Trust and Harrison are bound not to disclose or utilize confidential information of CHRW and CHRW is bound not to disclose confidential information of Command) and relates to the actual business, research or development of the Respective Business, and is not generally available to the public. Examples of confidential information includes, but is not limited to, confidential knowledge data or other proprietary information relating to products, services, processes, know-how, designs, formulas, developments or experimental work, inventions, computer programs, source code, data bases, customer lists, supplier data, business plans, business strategies and models, marketing plans or strategies, financial information, or other subject matter pertaining to the Respective Business and/or any businesses, operations, activities or plans of the Respective Business or of its customers, consultants or contractors.

9. **Covenants Regarding Other Proprietary Interests.**

A.    Through June 10, 2009, Command, Loeb, and/or the Trust shall not directly or indirectly invest in, acquire, purchase or become Affiliated with ATG, TSG, Advantage Freight, Strive Logistics, TREX Brokerage, or Circle 8 Logistics or any predecessors, successors, or affiliates of these entities.

B.    Through June 10, 2011, Command, Loeb, Harrison and/or the Trust shall not open an office within 7.5 miles of any CHRW office existing in Chicago, Illinois as of March 10, 2006. Such offices are located at 1840 N. Marcey, Chicago, Illinois and 600 W. Chicago Avenue, Chicago, Illinois.

15

CHI 11076630.1

C.     Through June 10, 2009, Command, Loeb, Harrison and/or the Trust shall not directly or indirectly have any freight business affiliation, freight software affiliation or affiliation related to freight brokerage, freight logistics or freight forwarding with Jeff Silver.

D.     Through August 17, 2010, Command, Loeb and/or the Trust may not directly or indirectly develop or provide a queuing feature or application to any person or entity in the freight brokerage, freight forwarding or freight logistics business and may not use or design a queuing feature or application for use with or use in freight brokerage, freight forwarding or freight logistics. Command, Loeb and the Trust shall provide a copy of any patent applications for a queuing feature or application to CHRW's attorneys within seven (7) days of the submission of any such application(s) or revisions to any such application(s) subject to confidential treatment so long as the application does not violate this Agreement.  Command, Loeb and/or the Trust may attempt to obtain a patent on a queuing feature or application at any time in any industry or may license the feature or application in any industry other than in the freight brokerage, freight forwarding or freight logistics industry.

10.     **Change in Control.**

A.     Through August 17, 2010, should Loeb and the Trust sell all ownership interest in Command and any acquired or Affiliated freight brokerage, freight forwarding and/or freight logistics entities and related software (whether including or excluding queuing or "Nexus" software) to one or more bona fide purchasers in one or more arms length transactions and completely divest himself and it of all financial and ownership interests (except seller debt financing which may not include any earn out or funds payable to Loeb or the Trust based upon performance, profits, revenues or other success based payments) in any entity or software related to freight brokerage, freight forwarding or freight logistics ("Change in Control"), then upon

16

such a Change in Control, the acquirors and Command and its Affiliated freight brokerage, freight forwarding and freight logistics entities shall be relieved of the obligations in this Agreement contained in paragraphs 3.A., 3.C. and 4.

For clarity, upon a Change in Control, Loeb and the Trust may still own Nexus software, so long as it is held in compliance with the terms and conditions of this Agreement, and may own not more than 5% of any publicly traded company listed on an exchange engaged in freight logistics, freight brokerage or freight forwarding, so long as it is held in compliance with the terms and conditions of this Agreement, including paragraph 10.G. and such stock is not obtained in any transaction(s) to avoid the terms and conditions of this Agreement.

B.    Following a Change in Control, Loeb and/or the Trust shall remain bound by all terms of this Agreement. The acquiror will be prohibited from using Express or Slingshot as provided herein, and shall not by virtue of paragraph 10.A. of this Agreement be entitled to use knowledge acquired by Command, Loeb, Harrison and/or the Trust about Express or Slingshot prior to March 10, 2006 or be a beneficiary of the release contained in paragraph 14 of this Agreement. Further, upon such a Change in Control, paragraph 7 of this Agreement shall no longer be applicable to Command, except that as a condition of the Change in Control, for so long as the acquiror continues to employ such persons, such acquiror shall obligate former CHRW employees Kevin Sherwood, Brian Burke, Scott Carlson, John Pavlic, David Ardell, Josh Wesolowski and Matthew Culp to adhere to paragraphs 7.A., 7.B. and 7.C. in accordance with the terms thereof. Any other former CHRW employee under a non-compete or confidentiality agreement in addition to current CHRW employees shall continue to be subject to the terms of such agreements.

17

C. At least fourteen (14) days prior to a Change in Control, Command, Loeb and the Trust shall notify CHRW of the identity of the bona fide purchaser(s) in writing, and shall supply CHRW with reasonable information to determine whether the purchaser is a bona fide purchaser and that an arms lengths transaction will occur. If the Change in Control transaction(s) is to be seller debt financed, the acquiror must first agree to be bound by all of the terms of this Agreement for twenty-one (21) days following the Change in Control and notice to CHRW, and must agree to be bound beyond the twenty-one (21) days by the specific obligations in this Agreement not to use Express or Slingshot as stated herein and will not benefit from, nor be a beneficiary of, the release contained in paragraph 14 of this Agreement.

D. For purposes of this Agreement, "bona fide" purchaser means a person or entity unrelated to: Loeb, the Trust, Jeff Silver or Harrison, as well as their families; a person or entity not employed by or in a consulting relationship with Command, Loeb, Harrison or the Trust on or during the twenty-four (24) months preceding the Change in Control; a person or entity not employed by CHRW on or during the twenty-four (24) months preceding the Change in Control; and a person or entity not employed by, in a consulting relationship with, or owned by or providing a financial interest directly or indirectly to Loeb, the Trust, any family members of Loeb, Jodi Sue Loeb, Jeff Silver, Danny Zamost or Harrison that relates to freight brokerage, freight forwarding or freight logistics.

E. If the Change in Control is seller debt financed and the purchaser defaults such that ownership or a financial interest reverts back to Loeb and/or the Trust, all of the restrictions in this Agreement shall be reinstated with full force and effect as if no Change in Control occurred.

18

CHI 11076630.1

F.      Any new entity created, purchased by, or otherwise Affiliated with Loeb and/or the Trust relating to freight brokerage, freight logistics or freight forwarding will be and will acknowledge in writing in advance that it is bound by the terms of this Agreement, else Loeb and/or the Trust shall not be permitted to move forward with such transaction.

G.      Loeb and/or the Trust may own not more than 5% of any publicly traded companies listed on an exchange primarily engaged in freight logistics, freight brokerage or freight forwarding.

11.     **Representations and Warranties.** The Parties agree that the obligations, rights, releases, representations and warranties in this Agreement are material terms and that this matter has been resolved and could not have been resolved without reliance upon the obligations, rights, releases, representations and warranties in this Agreement. Further, Command, Loeb, Harrison and the Trust hereby specifically represent and warrant severally, and not jointly, as provided in A-E below, CHRW represents and warrants as provided in E below, and Harrison represents as provided in F below that:

A.      Other than the equity and debt interest in Command Transportation, LLC, and as provided in paragraph 10.G., Command, Loeb, Harrison and the Trust do not directly or indirectly have any financial interest or ownership interest in any other freight brokerage, freight forwarding or freight logistics entities or businesses;

B.      All copies of Slingshot, including but not limited to, source code, software, programming, databases and stored procedures, within his or its knowledge, custody or control, have been or will be collected and provided to the Custodian; and none has any copies of Express or Express source code, software, programming, databases or stored procedures;

19

C.     None has provided, licensed or sold copies of Express or Slingshot in any format to any other person or entity other than to CHRW, Command Transportation, LLC and DND Express and all such materials within his or its knowledge, possession or control (other than such materials provided to CHRW or its agents) have been or will be provided to the Custodian;

D.     None has sought any patents, copyrights or other intellectual property protection on any aspect of Slingshot or Express other than a feature of queuing or "Nexus" (which CHRW contends it had a concept that may be similar to such a feature in development or use in 1998 and in 2005 and thus may object to or challenge any attempt to obtain intellectual property rights that Command, Loeb or Harrison may attempt to obtain on such a feature or application);

E.     Each has complied with the material terms of this Agreement since February 16, 2006; and

F.     Harrison specifically represents and warrants that he has no employment or consulting relationships in the freight brokerage, freight forwarding or freight logistics industry other than his employment with Command Transportation, LLC.

12.    **Disclosure of Terms of This Agreement.**  The terms of this Agreement shall not be confidential. However, Exhibits B, C, D and E to this Agreement shall be confidential and shall only be used by the Parties to comply with this Agreement and shall not be used for any other purpose or disclosed to third parties.

13.    **Dismissal of Claims.**  An Agreed Order of Dismissal shall be prepared and presented to the Court within fourteen (14) days of full execution of this Agreement by which the Court shall retain jurisdiction of the Parties and this matter to enforce this Agreement. This

20

Agreement shall be attached to the Order of Dismissal and Exhibits B, C, D and E filed under seal or provided to the Court in camera, if necessary. This matter will be dismissed without prejudice and shall become a dismissal with prejudice without further action of the Court on June 10, 2011, if no motion, petition or rule is brought by any of the Parties regarding a violation of this Agreement.

14. **Releases.** C.H. Robinson Worldwide and Command Transportation, LLC, Paul Loeb, Eric Harrison and The Jodi Sue Loeb Trust, on behalf of itself or himself, its successors, divisions, Affiliates, subsidiaries and parents, and collectively, its or his employees, officers, directors, partners, agents, assignees and attorneys agree:

A. to fully and completely waive, release, and forever discharge one another, from any and all claims, actions, causes of action, complaints, grievances, demands, allegations, promises, and obligations for damages, losses, expenses, fees, wages, attorneys' fees or costs, and any and all other demands which each may have against any of the others through the execution date of this Agreement, arising out of the allegations in the Lawsuit and any compulsory counterclaims that could have been brought by one another through the execution date of this Agreement, provided however this release shall not release the obligations under this Agreement or the provisions of the Agreed Protective Agreement in the Lawsuit;

B. any future claim, except a claim for violation of this Agreement or the Agreed Protective Order, brought by one another regarding a claim similar to that raised in the Complaint in this Lawsuit against one or more of the others unless based upon improper conduct occurring subsequent to March 10, 2006 and based upon knowledge of Express' or Slingshot's confidential and/or proprietary information acquired after March 10, 2006; and

21

C.     this does not release any real estate tax issues or water damage issues between CHRW, Command, Harrison or The Trust.

15.     **Non-Admission.** Nothing contained in this Agreement shall be deemed an admission of liability or any violation of any applicable law, rule, regulation, order, or contract of any kind.

16.     **Injunctive Relief, Enforcement Proceedings and Attorney's Fees.** The Parties to this Agreement may seek enforcement of any term, covenant, right or obligation in this Agreement in law and/or in equity, including, in addition to damages, attorney fees and costs, temporary, preliminary and permanent injunctive relief. Only the prevailing party successfully enforcing any portion of this Agreement in any subsequent proceedings shall be entitled to reasonable attorney fees and costs.

17.     **Agreement Concerning Litigation Costs and Litigation Attorneys' Fees.** The Parties understand and agree that they will be solely responsible for all expenses incurred by them respectively or on their behalf in connection with this matter, including but not limited to their respective attorneys' fees, costs, and disbursements. Accordingly, upon execution of this Agreement by the Parties, the Parties do hereby fully and finally release, acquit, and forever discharge each other from any liability or action of any kind for attorneys' fees, costs, and/or disbursements incurred in connection with this matter, and the Parties further covenant and agree never to institute any action or proceeding to recover any such attorneys' fees, costs, and/or disbursements from each other in connection with this matter, other than in a proceeding to enforce this Agreement.

22

18. **Full Knowledge, Consent and Voluntary Signing.** The Parties acknowledge that each is represented in this matter by legal counsel; that each has been given a reasonable time in which to consider this Agreement; and that: (A) each has carefully read this Agreement and fully understands it meaning, intent and legal consequences; (B) each has had this Agreement and its legal consequences explained to him, her or it by counsel; (C) each agrees to all the terms of the Agreement and is voluntarily signing below; (D) the consideration contained herein is in addition to anything of value to which each is already entitled; (E) that each has not, will not and cannot rely on any representations not expressly made herein; and (F) the only consideration for signing this Agreement are the terms stated herein and no other promises or representations of any kind have been made by any person or entity whatsoever to cause each to sign this Agreement.

19. **Applicable Law and Jurisdiction.** This Agreement shall be construed in accordance with the laws of the State of Illinois and any action brought to enforce this Agreement shall be brought in the federal courts of the Northern District of Illinois, Eastern Division, each Party agreeing to submit itself or himself to the jurisdiction of the federal courts of the Northern District of Illinois, Eastern Division without regard to conflicts of law principles or personal jurisdiction.

20. **Entire Agreement/Severability.** This Agreement and the Protective Order entered by the Court in the Lawsuit set forth the entire agreement between the Parties regarding the resolution of this Lawsuit and supersedes any other written or oral understandings not expressly identified herein regarding the resolution of the allegations in the complaint in this Lawsuit. The Parties agree that if any provision of this Agreement or application thereof is held to be invalid, the invalidity shall not affect other provisions or applications of this Agreement.

23

The parties agree that the Court shall have full authority to modify any provision herein that is overbroad or unenforceable to the extent necessary to make any such modified provision valid and enforceable.

21.   **Representations to Agree to This Agreement.**  The Parties represent and warrant that they have full authority to enter into this Agreement, that they have the ability, capacity and means to carry out the obligations herein, that all necessary actions have been duly taken to authorize the execution and delivery of this Agreement and that they are authorized to compromise the claims, demands, obligations and causes of action referred to in this Agreement.

22.   **Joint and Several Liability.**  The obligations in this Agreement are specific to the party identified in each obligation.  No party is jointly and severally liable for another party unless expressly permitted under this Agreement; by operation of common or statutory law; because of actions in concert with another; or because of an employer/employee or a principal/agent type relationship.

23.   **Waiver of Breach.**  No waiver by any of the Parties hereto of a breach of any provision of this Agreement by any other party or third-party to this Agreement, or of compliance with any condition or provision of this Agreement to be performed by such other party or third-party to this Agreement, will operate or be construed as a waiver of any subsequent breach by such other party or third-party to this Agreement or any similar or dissimilar provisions and conditions at the same or any prior or subsequent time.  The failure of any party or third-party to this Agreement to take any action by reason of such breach will not deprive such party or third-party to this Agreement of the right to take action at any time while such breach continues.

24

24. **Assignment.** The benefits, rights, obligations and protections in this Agreement may in whole be unilaterally assigned by CHRW. Should any other party or third-party to this Agreement wish to assign this Agreement, it may only be done with the express written consent of all the Parties.

25. **Counterparts and Facsimile.** This Agreement may be executed by the Parties in counterparts and by facsimile and each shall be deemed an original, but all shall together constitute one Agreed Agreement of Settlement.

26. **Notices.** Notices required by this Agreement shall be made to the following persons by U.S. mail, e-mail or facsimile:

A. For CHRW: Michael D. Wexler, Seyfarth Shaw LLP 55 E. Monroe Street, Suite 4200 Chicago, Illinois 60603; Facsimile: (312) 269-8869 and E-Mail: mwexler@seyfarth.com; and Ben Campbell, Associate General Counsel, C.H. Robinson Worldwide, Inc. 8100 Mitchell Road Eden Prairie, Minnesota 55344; Facsimile: (952) 937-7840; and E-Mail: ben.campbell@chrobinson.com.

B. For Command, Loeb and the Trust: Jonathan D. Wasserman, Neal, Gerber & Eisenberg LLP Two N. LaSalle Street Chicago, IL 60602; Facsimile: (312) 269-1747; and E-Mail: jwasserman@ngelaw.com; and Paul Loeb, Command Transportation, LLC, 7500 Frontage Road, Skokie, Illinois 60075; Facsimile: (877) 797-1799; and E-Mail: ploeb@commandtransportation.com.

25

C.    For Harrison: Mitchell L. Marinello, Novack and Macey LLP 303 West
Madison Street, Suite 1500 Chicago, Illinois 60606 Facsimile: (312) 419-6928 and E-Mail:
mmarinello@novackandmacey.com; and Eric Harrison, 1009 Milano Circle, #107
Brandon, FL 33511, E-Mail: eharrison@hsitechnologies.com.

**Agreed to by:**

C.H. Robinson Worldwide, Inc.

By: _Len Manning_

Its: _Vice President_

_June 22, 2006_
Date

Command Transportation, LLC

By: _____

Its: _____

_____
Date

The Jodi Sue Loeb Trust

By: _____

Its: _____

_____
Date


_____
Paul Loeb

_____
Date



_____
Eric Harrison

_____
Date

26

C. For Harrison: Mitchell L. Marinello, Novack and Macey LLP 303 West Madison Street, Suite 1500 Chicago, Illinois 60606 Facsimile: (312) 419-6928 and E-Mail: mmarinello@novackandmacey.com; and Eric Harrison, 1009 Milano Circle, #107 Brandon, FL 33511, E-Mail: eharrison@hsitechnologies.com.

Agreed to by:

C.H. Robinson Worldwide, Inc.

By: _____

Its: _____

Date: _____

Command Transportation, LLC

By _____

Its: Resident

Date: 6/21/06

The Jodi Sue Loeb Trust

By _____

As: Trustee

Date: 6/23/06

Paul Loeb

Date: 6/21/06

_____
Eric Harrison

_____
Date

26

CH 11076525.4 11076630.1



C.    For Harrison: Mitchell L. Marinello, Novack and Macey LLP 303 West Madison Street, Suite 1500 Chicago, Illinois  60606 Facsimile: (312) 419-6928 and E-Mail: mmarinello@novackandmacey.com; and Eric Harrison, 1009 Milano Circle, #107 Brandon, FL 33511, E-Mail: eharrison@hsitechnologies.com.

Agreed to by:

C.H. Robinson Worldwide, Inc.

By: _____

Its: _____

Date _____

Command Transportation, LLC

By: _____

Its: _____

Date _____

The Jodi Sue Loeb Trust

By: _____

Its: _____

Date _____

Paul Loeb

Date _____

Eric Harrison

June 22, 06

Date

26

CHI : 1076630.1

Prepared jointly by:

Michael D. Wexler
J. Scott Humphrey
SEYFARTH SHAW LLP
55 East Monroe Street
Suite 4200
Chicago, Illinois 60603
(312) 346-8000

Stephen Fedo
William J. Tarnow
Neal Gerber & Eisenberg LLP
2 North LaSalle Street
Suite 2200
Chicago, Illinois 60602

Mitchell L. Marinello
Joseph Nacca
Novack and Macey LLP
303 West Madison Street
Suite 1500
Chicago, Illinois 60606

27

## EXHIBIT A
### Confidentiality and Non-Disclosure Covenant

This Confidentiality and Non-Disclosure Agreement ("Agreement") is entered into by _____ ("Inspector") to benefit C.H. Robinson Worldwide, Inc. ("CHRW"), Command Transportation, LLC ("Command"), Paul Loeb ("Loeb") and The Jodi Sue Loeb Trust ("Trust") in order for Inspector to perform inspection(s) of Command's, Loeb's and/or the Trust's freight brokerage, freight forwarding or freight logistics software applications ("Software").

WHEREAS, CHRW, Command, Loeb and the Trust entered into a Settlement Agreement in *C.H. Robinson Worldwide, Inc., v. Command Transportation, LLC, Paul Loeb and Eric Harrison,* No. 05 C 3401, U.S. District Court, Northern District of Illinois, Eastern Division (the "Lawsuit"); and

WHEREAS, the purpose of this Agreement is to set forth the conditions governing the disclosure of certain Command, Loeb and/or Trust software and related information in electronic, written and/or verbal form to Inspector for the limited purpose of examining the Software to insure compliance with Settlement Agreement in the Lawsuit.

THEREFORE, Inspector agrees for good and valuable consideration, the sufficiency of which is hereby acknowledged, as follows:

1. **Confidentiality.** During the course of the inspection described herein, Inspector will have access to and review information considered by Command, Loeb and the Trust to be confidential. Inspector agrees that he shall not directly or indirectly utilize or disclose any information learned during the inspection. However, Inspector may reveal all information learned during the inspection to CHRW's outside counsel, for his or her eyes only, to determine compliance with the Settlement Agreement and may reveal information learned during the inspection to CHRW only if a violation of the Settlement Agreement is alleged and a proceeding is initiated. Further, only in a general or cursory way, Inspector may reveal the results of the inspection to CHRW, but no specifics that might compromise confidentiality.

2. **Non-Disclosure.** Inspector's review of the Software will solely be to evaluate the Software as described herein and in the Settlement Agreement. Inspector shall not directly or indirectly at any time use, disclose nor provide to third parties any inspection report or any information learned from the inspection, unless specifically permitted by this Agreement or pursuant to the Inspection instructions contained in the Settlement Agreement.

3. **No Rights Through Disclosure.** Inspector acknowledges that he shall not acquire any right, title or interest in the software or information described herein by virtue of Inspector's inspection.

4. **Entire Agreement.** This Agreement constitutes the entire Agreement with respect to the subject matter hereof. The terms of this Agreement may not be changed except by subsequent written agreement duly executed by Inspector, CHRW, Command, Loeb and the Trust.

5. **Applicable Law.** This Agreement shall be interpreted in accordance with and governed under the internal laws of the State of Illinois.

Agreed to By:

_____
Inspector

_____
Date:

# EXHIBIT B

**This exhibit contains confidential customer lists provided to the parties to this settlement agreement and can be provided to the court for *in camera* inspection if requested.**

# EXHIBIT C

**This exhibit contains confidential customer lists provided to the parties to this settlement agreement and can be provided to the court for *in camera* inspection if requested.**

**EXHIBIT D**

**This exhibit contains confidential customer lists provided to the parties to this settlement agreement and can be provided to the court for *in camera* inspection if requested.**

# EXHIBIT E

**This exhibit contains confidential customer lists provided to the parties to this settlement agreement and can be provided to the court for *in camera* inspection if requested.**

## CERTIFICATE OF SERVICE

Michael D. Wexler, an attorney, hereby certifies that he caused a true and correct copy of

the foregoing **STIPULATION TO DISMISS and Exhibit** to be served via the United States

District Court for the Northern District of Illinois Electronic Case Filing System upon the

following:

Stephen Fedo                            Mitchell L. Marinello
sfgedo@ngelaw.com                       Novack & Macey
                                        100 North Riverside Plaza
William J. Tarnow                       Chicago, Illinois 60606
wtarnow@ngelaw.com                      (Via U.S. Mail)

Joseph Nacca
jnacca@novackandmacey.com

on this 29th day of June, 2006.

_____s/ Michael D. Wexler_____
Michael D. Wexler